IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRANDON WELLS, HORACE SUTTERER, KIRK WILLIAMS, ET AL. | § § § | No. 4:10-cv-02373 |
| Plaintiffs | § § | |
| v. | § § | JURY DEMANDED |
| TAXMASTERS, INC., TMIRS ENTERPRISES, LTD., TM GP SERVICES LLC D/B/A TAXMASTERS, PATRICK R. COX & ALEX CLAMON, INDIVIDUALLY | § § § § § | J. HARMON |
| Defendants | § § | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, TaxMasters, Inc., TMIRS Enterprises, LTD., TM GP Services, LLC d/b/a/ TaxMasters, Patrick R. Cox, and Alex Clamon, file this Motion for Summary Judgment pursuant to FRCP 56 and respectfully assert as follows:

**I.    Introduction**

TaxMasters, Inc. ("TaxMasters") is a Texas-based tax representation and/or tax resolution company. Specifically, TaxMasters assists individuals and businesses throughout the United States with various federal income tax issues, including, but not limited to, preparing federal income tax returns; responding to IRS audits; negotiating a release or reduction in IRS wage

1

garnishment proceedings; and assisting taxpayers with various IRS enforcement actions.  TaxMasters employs **commission-based** salespeople—called "Sales Consultants"—to sell these tax resolution and tax representation services directly to taxpayers.

On July 2, 2010, Brandon Wells, Horace Sutterer, and Kirk Williams—former TaxMasters Sales Consultants—sued TaxMasters, related corporate entities, and two company officials, Patrick Cox and Alex Clamon, under the Fair Labor Standards Act ("FLSA") for failing to pay them overtime compensation at the rate of 1.5 times their regular rate of pay during their employment. Subsequently, eighteen other former TaxMasters' Sales Consultants opted in or their separate lawsuits were consolidated into this action.[1]

Plaintiffs have adduced no evidence that TaxMasters failed to pay them overtime in accordance with the FLSA. Yet, even assuming *arguendo* they have, it is indisputable that they are exempt under the FLSA's "commissioned sales" exemption, 29 U.S.C. section 207(i).  Moreover, Defendants Cox and Clamon do not qualify as Plaintiffs' "employer" under

---

[1]On November 15, 2010, this Court consolidated *Darryl De La Bastide v. TMIRS Enterprises, Ltd.*, No. 4:10cv3055 (S.D. Texas) with this action. *See* Dkt. 33. Additionally, on April 14, 2011, this Court consolidated *Otis Durrett And David Pesquera v. TaxMasters, Inc.*, No. 4:10cv0251 with this action. *See* Dkt. 53.

the FLSA. Therefore, pursuant to FRCP 56, TaxMasters and its co-defendants are entitled to judgment as a matter of law.

## II.   Undisputed Facts

Following are the undisputed facts.

### A. TaxMasters Sells Tax Representation Services Directly To Individuals And Businesses

TaxMasters, Inc. ("TaxMasters") is a Houston, Texas-based company that assists taxpayers—both individuals and businesses—throughout the United States with various federal income tax issues. Specifically, TaxMasters prepares federal income tax returns; responds to IRS audits; negotiates releases or reduction in IRS wage garnishments proceedings; and assists taxpayers with various other IRS enforcement actions.[2] TaxMasters sells and provides its tax resolution and tax representation services ***directly*** to the individual taxpayers and does not resell, factor, or otherwise outsource its sales contracts to third parties.[3] As a result, one hundred percent (100%)

---

[2]*See* Declaration of Renee' Anderson-Miller (Exhibit A, at Exh. 1).

[3]*See* Plaintiffs' First Amended Collective Action Complaint (Dkt. 49), at 4, para. 11 (emphasis added) ("Defendants…***sells [sic] tax resolution packages to customers*** with tax issues."); Plaintiffs' Otis Durrett And David Pesquera's Original Complaint For Damages (Dkt. 1), No. 4:10cv5021, at 3, para. 10 (emphasis added) ("Defendants form a ***tax resolution enterprise*** engaged in the business of providing services and products to ***tax payers*** across the country aimed at assisting ***tax payers*** in dispute resolution with the IRS."); Plaintiff Darryl De La Bastide's Second Amended Complaint, No. 4:10cv3055, at 3, para. 9 (emphasis added) ("The entity defendants…are an integrated enterprise providing ***tax consulting services*****."). *See also* Declaration of Renee' Anderson-Miller (Exhibit A).

of the company's sales are not for resale.[4] Additionally, TaxMasters is not involved in the manufacturing process.[5]

### B. Plaintiffs Were Employed As Salespersons

During their employment at TaxMasters, all of the plaintiffs were employed as "Sales Consultants."[6] The primary responsibilities of a TaxMasters Sales Consultant are to sell the company's tax resolution and tax representation services to taxpayers.[7]

### C. Plaintiffs Earned More Than 1.5 Times The Minimum Wage And More Than 50% Of Their Compensation In Commissions

---

[4] *See* Plaintiffs' First Amended Collective Action Complaint  (Dkt. 49), at 4, para. 11 ("Defendants…sells [sic] tax resolution packages to customers with tax issues."); Plaintiffs' Otis Durrett And David Pesquera's Original Complaint For Damages (Dkt. 1), No. 4:10cv5021, at 3, para. 10 (emphasis added) ("Defendants form a ***tax resolution enterprise*** engaged in the business of providing services and products to ***tax payers*** across the country aimed at assisting ***tax payers*** in dispute resolution with the IRS."). *See also* Declaration of Renee' Anderson-Miller (Exhibit A).

[5] *See* Declaration of Renee' Anderson-Miller (Exhibit A).

[6] See Plaintiffs' First Amended Collective Action Complaint  (Dkt. 49), at 4, para. 12 ("[T]he Company employs inside sales people, or 'tax consultants,' including the ***Plaintiffs***, to sell its tax services to potential clients.") (emphasis added); Plaintiffs' Otis Durrett And David Pesquera's Original Complaint For Damages (Dkt. 1), No. 4:10cv5021, at 3, para. 13 (emphasis added) ("Plaintiffs worked for Cox and the Taxmasters [sic] Defendants as ***sales consultants*** during the time period dating back to the Fall [sic] and Winter [sic] of 2007…"); Plaintiff Darryl De La Bastide's Second Amended Complaint, No. 4:10cv3055, at 3, para. 12 (emphasis added) ("De La Bastide began working for TaxMasters in January of 2008 as a ***sales consultant***."). *See also* Depo. of Renee' Anderson-Miller (Exhibit B), at 7.

[7] *See* Plaintiffs' First Amended Collective Action Complaint  (Dkt. 49), at 4, para. 12 ("[T]he Company employs inside sales people, or 'tax consultants,' including the Plaintiffs, to sell its tax services to potential clients."). *See also* Declaration of Renee' Anderson-Miller (Exhibit A).

During the first eight weeks of their employment at TaxMasters, all of the plaintiffs were paid a "training wage" of $11.50 per hour or commissions on their consummated sales of TaxMasters services, whichever was greater.[8] After this eight week training period, all of the plaintiffs were paid commissions on their consummated sales.[9]  In actuality, with the possible exception of the eight week "training" period, all of the plaintiffs were paid more than half their compensation in commissions on their sales of TaxMasters' tax resolution and representation services.[10] Additionally, because their earned commissions were sizeable, the plaintiffs' "regular rate" of pay generally far exceeded 1.5 times the minimum wage.[11]

---

[8]*See* Depo. of Renee' Anderson-Miller (Exhibit B), at 20-21; 25-26; Plaintiffs' First Amended Collective Action Complaint  (Dkt. 49), at 4, para. 12 ("The tax consultants were…paid an hourly rate of pay and /or a straight commission, whichever was greater.").

[9]*See* Depo. of Anderson-Miller (Exhibit B), at 23-26, and depo exhibit 1.

[10]Defendants have attached the plaintiffs' actual payroll records for the period covered by this lawsuit. *See* Exhibits H through BB. For the Court's convenience, Defendants have also prepared and attached spreadsheets for each plaintiff showing the plaintiffs' commissions as a percentage of their gross compensation. *See* Exhibit CC. In those isolated instances where the spreadsheets show the plaintiffs' commissions as less than 50% of their gross compensation—demarcated on the spreadsheets by a single asterisk (*)—this is because the plaintiffs received large discretionary bonuses and/or vacation/holiday pay. *See* Declaration of Stacy Belisle (Exhibit C). Under 29 C.F.R. 779.415(a), discretionary bonuses and vacation/holiday pay are excludable from the "regular rate."  Hence, when these amounts are excluded from the plaintiffs' "regular rate" in accordance with 29 C.F.R. 779.415(a), the plaintiffs' commissions exceed 50% of their compensation.

[11]The Defendants' spreadsheets also show each plaintiff's "regular rate" of pay. *See* Exhibit CC. In a few instances—demarcated on the spreadsheets by double asterisks

### III. Legal Argument

### A. FLSA

The FLSA provides, in relevant part, that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee received compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *See* 29 U.S.C. section 207(a)(1). As this Court has previously held:

> To prevail on a FLSA claim for unpaid minimum wages or overtime, a plaintiff must demonstrate by a preponderance of the evidence (1) the existence of an employment relationship, (2) that the employee was engaged in commerce or employed by an enterprise engaged in commerce, (3) that defendants failed to pay the employee the minimum wages or overtime required by the statute, and (4) that the employee is owed the amount claimed by a just and reasonable inference.

*See Saavedra v. Richard*, 2011 U.S. Dist. LEXIS 21334, at *15-16 (S.D. Tex. 2011) (Harmon, J.); *see also Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946) ("An employee who brings suit . . . for unpaid

---

(\*\*)—a Sales Consultant's "regular rate" of pay fell below 1.5 times the minimum wage, but the Consultant was paid overtime at the rate of 1.5 times his/her "regular rate," so he/she suffered no damages. Also, in a few instances—demarcated on the spreadsheets by triple asterisks (\*\*\*)—a Sales Consultant's "regular rate" of pay fell below 1.5 times the minimum wage, but the Consultant did not work more than 40 hours in a workweek, so no overtime compensation is owed. Of course, even assuming *arguendo* the "commissioned sales" exemption would not apply in these few instances, this would not affect the exemption's applicability for the remainder of a Sales Consultant's employment at TaxMasters.

minimum wages or unpaid overtime compensation . . . has the burden of

proving that he performed work for which he was not properly

compensated."). Assuming the plaintiff carries this burden of proof, the

employer must demonstrate entitlement to FLSA exemption(s).

### B. Plaintiffs Have Failed To Demonstrate TaxMasters Did Not Pay Them Overtime Required By The FLSA

Initially, the plaintiffs have adduced no evidence that the Defendants

failed to pay them overtime in accordance with the FLSA. More specifically,

Plaintiffs have failed to show that they worked more than forty hours in

particular workweek(s) and that they were not compensated at the rate of 1.5

times their regular rate of pay for any overtime in those workweeks.

Therefore, Defendants are entitled to judgment as a matter of law on

Plaintiffs' FLSA claims for this reason alone. *Saavedra v. Richard*, 2011

U.S. Dist. LEXIS 21334, at *15-16 (S.D. Tex. 2011) (Harmon, J.).

### C. Patrick Cox and Alex Clamon Were Not Plaintiffs' "Employer"

Additionally, Plaintiffs have failed to demonstrate that Defendants,

Patrick Cox and Alex Clamon, were their "employer," as required by the

FLSA. Under the FLSA, an employer is "any person acting directly or

indirectly in the interests of an employer in relation to an employee." 29

U.S.C. § 203(d). In order to be held to act in the interests of an employer in

relation to an employee, an individual must have "substantial control of the terms and conditions of the work…" of that employee. *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

Beyond the undisputed fact that Patrick Cox is TaxMasters' President and Chief Executive Officer and has a financial interest in the company, the plaintiffs have adduced no evidence that Mr. Cox has "substantial control of the terms and conditions" of their work. Additionally, beyond the undisputed fact that Alex Clamon has served as TaxMasters' Vice-President of Sales, the plaintiffs have adduced no evidence that Mr. Clamon has "substantial control of the terms and conditions" of their work. Therefore, they may not be held liable as "employers" under the FLSA.

### D. All Plaintiffs Are Exempt Under 29 U.S.C. section 207(i)

Even assuming *arguendo* Plaintiffs can demonstrate that they worked overtime in particular workweeks and were not paid 1.5 times their regular rate of pay in those weeks, all of the plaintiffs are exempt from overtime compensation under the FLSA's "commissioned sales" exemption, 29 U.S.C. section 207(i). Section 7(i) provides:

Employment by retail or service establishment

No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if

(1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and

(2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

Thus, section 7(i) has three requirements: the employee (1) must earn a "regular rate" of pay that is at least 1.5 times the minimum wage; 2) must earn more than half of his/her salary in commissions for a representative period not less than one month; and 3) must work for a "retail or service establishment." *See English v. Ecolab, Inc.*, 2008 U.S. Dist. LEXIS 25862, at *7 (S.D. NY 2008); 29 C.F.R. 779.412.

## 1. Plaintiffs Earned At Least 1.5 Times The Minimum Wage

It is indisputable that, throughout their employment at TaxMasters, all plaintiffs earned a "regular rate"[12] of pay that, in general, far exceeded 1.5 times the minimum wage.[13] Therefore, they satisfy the first requirement of

---

[12]The FLSA defines "regular rate" as the hourly rate actually paid the employee for "all remuneration for employment." 29 U.S.C. § 207(e). However, as noted *supra*, at 6 n. 11, certain amounts paid by the employer are excludable from the "regular rate."

[13]Effective July 24, 2008, the minimum wage in Texas was $6.55/hour. Effective July 24,

section 7(i).

### 2. Plaintiffs Earned More Than Half Their Salary In Commissions

Additionally, it is indisputable that, except for their first eight week "training" period—in which they were paid the greater of their commissions or $11.50 per hour—all of the plaintiffs were paid more than half their salary in commissions. Therefore, TaxMasters has satisfied the second requirement of section 7(i): to wit, each plaintiff earned more than half of his/her salary in commissions for a "representative period."[14]

### 3. TaxMasters Is A "Retail Or Service Establishment"

Finally, it is indisputable that TaxMasters is a "retail or service establishment." Section 7(i) does not define the term, "retail or service establishment." *See Wendt v. Vacations To Go, Inc.*, No. 4:04cv3170 , at 5 (S.D. Tex. 2005) (Rosenthal, J.) (Exhibit D). However, both the Department of Labor and other federal courts use the definition of "retail or service establishment" in the since-repealed 29 U.S.C. section 213(a)(2): "an

---

2009, the minimum wage in Texas was $7.25/hour. *See* www.bls.gov/ro6/fax/minwage_tx.htm

[14]Under section 7(i), the "representative period" must not be "less than one month." *See* 29 U.S.C. section 207(i)(2); 29 C.F.R. section 779.417. Here, for the ***entire*** period of their employment after their first eight week "training" period—which, in each plaintiff's case, exceeded one month—all plaintiffs were paid more than half their compensation in commissions. Therefore, section 7(i)'s "representative period" requirement has clearly been satisfied.

establishment 75 percentum of whose annual dollar volume of sales of goods

or services (or of both) is not for resale and is recognized as retail sales or

services in the particular industry." *See* 29 C.F.R. 779.411; *Wendt*, at 5,

citing 29 U.S.C. section 213(a)(2) (1988), repealed by Pub. L. 101-157 §

3(c)(1), Nov. 17, 1989, 103 Stat. 939; *Gieg v. DRR, Inc.*, 407 F.3d 1038,

1047 (9th Cir. 2005); *Reich v. Delcorp. Inc.*, 3 F.3d 1181, 1183 (8th Cir.

1993); *English v. Ecolab*, 2008 U.S. Dist. LEXIS 25862, at * 8 (S.D. NY

2008); *Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F.Supp. 2d 529,

537 (N.D. Ill. 2006).  Under the DOL's regulations, a sale is made for resale

"where the seller knows or has reasonable cause to believe that the goods or

services will be resold, whether in their original form, or in an altered form,

or as part, component, or ingredient of another article." *See* 29 C.F.R.

section 779.331.

    The DOL regulations—specifically, 29 C.F.R. section 779.318—also

set forth the "[c]haracteristics and examples of retail or service

establishments":

> (a) Typically a retail or service establishment is one which sells
> goods or services to the general public. It serves the
> everyday needs of the community in which it is located. The
> retail or service establishment performs a function in the
> business organization of the Nation which is at the very end
> of the stream of distribution, disposing in small quantities of
> the products and skills of such organization and does not
> take part in the manufacturing process.

*See* 29 C.F.R. section 779.318(a). Courts utilize the section 779.318 criteria

to determine whether a particular business qualifies as a "retail or service

establishment." *See Wendt*, at 14-16.

### a. TaxMasters Does Not Resell Its Services

TaxMasters does not resell any of its services. As a result, at least

seventy-five (75) percent—in fact, one hundred percent—of TaxMasters'

annual dollar volume of sales of goods or services (or of both) are not resale

sales.[15]

### b. TaxMasters' Sales Have All The "Characteristics" Of Retail Sales

TaxMasters' sales of its services have all the requisite characteristics

of retail sales. First, as the Plaintiffs concede, the company sells income tax

resolution and/or tax consulting services directly to the general public,

---

[15]*See* Declaration of Renee' Anderson-Miller (Exhibit A), at para. 6 ("TaxMasters provides its tax resolution and tax representation services directly to individual taxpayers and does not resell, factor, or otherwise outsource its sales contracts to third parties."); Declaration of Patrick R. Cox (Exhibit G), at para. 14 TaxMasters enters into written contracts with each individual taxpayer specifying the services the company will provide him/her. These contracts are held by TaxMasters and are not factored or resold to third parties."); Plaintiffs' First Amended Collective Action Complaint (Dkt. 49), at 4, para. 12 (emphasis added) ("[T]he Company employs inside sales people, or 'tax consultants,' including the Plaintiffs, to ***sell its tax services to potential clients***."); Plaintiffs' Otis Durrett And David Pesquera's Original Complaint For Damages (Dkt. 1), No. 4:10cv5021, at 3, para. 10 (emphasis added) ("Defendants form a tax resolution enterprise engaged in the business of providing services and products to ***tax payers*** across the country aimed at assisting ***tax payers*** in dispute resolution with the IRS.")

primarily individual taxpayers.[16] Second, as individuals and businesses require these tax resolution and tax consulting services on a daily basis, the company serves the everyday needs of the community in which it is located.[17] Third, TaxMasters performs a function that is at the very end of the stream of distribution, disposing in small quantities its products and skills.[18] *See Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F.Supp. 2d 529, 541 (Holding company employing mortgage loan officers is exempt under section 207(i) because the company performs "the discreet tasks of finding and closing loans, second mortgages, and home equity loans and the refinancing of existing loans. Once the loan has been closed or refinanced, [the company's] job is done."). Fourth, TaxMasters does not take part in the

---

[16]*See* Declaration of Renee' Anderson-Miller (Exhibit A), at para. 9 ("TaxMasters sells its tax representation and tax resolution services to taxpayers on a taxpayer-specific basis. The company's sales are to individual taxpayers and businesses and are custom-designed for each specific taxpayer's needs."); Declaration of Patrick R. Cox (Exhibit G) at para. 13 ("TaxMasters custom designs its tax resolution and tax representation services to meet the specific needs of each customer."); Plaintiffs' First Amended Collective Action Complaint (Dkt. 49), at 1, para. 1 ("The Defendants are in the business of selling tax resolution packages to customers with Internal Revenue Service ('IRS') tax issues.").

[17]*See* Declaration of Patrick R. Cox (Exhibit G), at para. 12 ("On a daily basis, TaxMasters is contacted by telephone by hundreds of individual consumers seeking our services."); Declaration of Renee Anderson-Miller (Exhibit A), at para. 8 ("Individuals and businesses seek out TaxMasters tax representation and tax resolution on a daily basis, usually contacting the company by telephone.").

[18]*See* Declaration of Patrick R. Cox (Exhibit G) at para. 13 ("TaxMasters custom designs its tax resolution and tax representation services to meet the specific needs of each customer. Therefore, the company's services are sold on an individualized basis and are never sold in bulk.").

manufacturing process.

Undoubtedly, Plaintiffs will argue that TaxMasters is not a "retail or service establishment" because 29 C.F.R. 779.317 provides that a **_"tax services"_** establishment is one of the "establishments to which the retail concept does not apply." However, under Fifth Circuit and other federal court precedent, plaintiffs' argument is unavailing.

First, 29 C.F.R. section 779.317 does not disqualify a tax **_"resolution"_** or tax **_"consulting"_** establishment—which, Plaintiffs concede, TaxMasters is[19]—from being a "retail or service" establishment, but only a tax **_"services"_** establishment, and it further fails to define to define or delineate the latter term. Second, even assuming *arguendo* TaxMasters may be characterized as a "tax services" establishment—which Defendants vigorously deny—the Fifth Circuit has made abundantly clear that this fact alone does not disqualify it as a "retail or service" establishment and that the controlling issue is whether there is "**_a retail concept_** in the defendants' business, notwithstanding the Secretary's determination" under 29 C.F.R.

---

[19]*See* Plaintiffs' First Amended Collective Action Complaint (Dkt. 49), at 1, para. 1 (emphasis added) ("The Defendants are in the business of selling **_tax resolution_** packages to customers with Internal Revenue Service ('IRS') tax issues."); Plaintiffs' Otis Durrett And David Pesquera's Original Complaint For Damages (Dkt. 1), No. 4:10cv5021, at 3, para. 10 (emphasis added) ("Defendants form a **_tax resolution enterprise_**…"); Plaintiff Darryl De La Bastide's Second Amended Complaint, No. 4:10cv3055, at 3, para. 9 (emphasis added) ("The entity defendants…are an integrated enterprise providing **_tax consulting services_**.").

section 779.317. *See Rachal v. Allen*, 376 F.2d 999, 1003 (5th Cir. 1967)

(emphasis added); *Wendt*, at 14 ("DOL's inclusion of travel agencies on a

list of establishments that lack a retail concept" does not preclude a finding

of exempt status under section 207(i)). This determination is one for the

courts, not the Secretary. *Id.*

Third, as various courts have noted, 29 C.F.R. 779.317 was

promulgated in 1970, and its list of non-"retail" establishments is

"antiquated" and not based on any "cohesive criteria"; therefore, it is not

entitled to any deference by this Court. *See*, e.g., *Martin v. Refrigeration*

*School, Inc.*, 968 F.2d 3, 7 n. 2 (9th Cir. 1992) (noting "no generating

principles" or "cohesive criteria" underlying the distinctions between

businesses the DOL considers "retail establishments" in section 779.317 and

those it does not); *Alvarado v. Corporate Cleaning Service, Inc.*, 719

F.Supp.2d 935, 945-946 (E.D. Ill. 2010) (Declining to defer to section

779.317, citing, *inter alia*, *Rachal v. Allen*, 376. F.3d 999 (5th Cir. 1967));

*Haskins v. VIP Wireless LLC*, 2010 U.S. Dist. LEXIS 106205 at * 11 n. 4

(W.D. Pa. 2010) (noting the list of "retail establishments" is "antiquated");

*Selz v. Investools, Inc.*, 2011 U.S. Dist. LEXIS 9364 at *13 (noting "the

Internet has fundamentally changed what is considered a 'retail or service

establishment,' and insofar as the DOL regulations do not take this into

account they are not a persuasive interpretation of the FLSA."); *Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F.Supp. 2d 529, 540  n.10 (N.D. Ill. 2006), citing *Martin v. Refrigeration School,  Inc.*, 968 F.2d 3, 5 (9th Cir. 1992) (Holding there "is no rational or factual basis for the Secretary's decision, embodied in § 779.317, to include certain categories of schools and to exclude all others" and therefore declining to "defer" to the DOL's regulation); *English v. Ecolab, Inc.*, 2008 U.S. Dist. LEXIS 25862 at *26 (S.D. NY 2008) (Holding section 29 C.F.R. section 779.317 (and related regulations) were entitled to limited deference because "[w]hile the regulations are frozen in time, the world has changed.").

Indeed, in *Ecolab*, the United States District Court for the Southern District of New York recognized, in *dictum*, that a "tax services" establishment is "obviously" a "retail" establishment.  *See Ecolab, Inc.*, 2008 U.S. Dist. LEXIS at *27 n. 14 (emphasis added) (29 C.F.R. section 779.317's **"_antiquated interpretation does not reflect storefront tax services, such as H&R Block, which are obviously retail."_**).[20] Thus, *Ecolab* supports the company's argument that it is a "retail sales or service establishment."

Finally, in determining whether section 207(i)'s "commissioned

---

[20]H&R Block is one of TaxMasters' primary competitors. *See* Declaration of Patrick R. Cox (Exhibit G), at para. 15.

salesperson" exemption applies to a particular employee, courts have looked at the underlying purpose of the exemption, which is designed to "address the inequities that can arise in paying overtime to commissioned employees." *See Ecolab*, 2008 U.S. Dist. LEXIS 25862, at *52; *see also Gieg v. DRR, Inc.*, 407 F.3d 1038, 1046 (9th Cir. 2005) ("The policy justification for the exemption thus appears to have more to do with the employee's compensation than with the exact nature of the goods or services sold. The regulation exempts employers who employ well-compensated employees earning commissions in 'big-ticket' departments from paying overtime."); *Gatto,* 442 F.Supp. 2d at 542 (noting the exemption is designed to preclude overtime compensation of sales employees earning commissions on "big-ticket" sales); *Wendt*, at 16 n. 5 (noting the FLSA was designed to "protect low-wage and marginal workers."). As Sales Consultants, each of the plaintiffs earned substantially more than the minimum wage[21] and received large commissions on relatively "big-ticket" sales. Therefore, they can hardly be characterized as low-wage or marginal workers deserving of protection under the FLSA. *See Ecolab*, 2008 U.S. Dist. LEXIS 25862, at

---

[21]In 2008, two plaintiffs (Thelma Coleman and Deaphalis Sample) earned approximately $150,000.00. *See* Exhibit E.  In 2009, one plaintiff (Horace Sutterer) earned approximately $91,000. *See* Exhibit F. In the entire period covered by this action, **_no_** plaintiff who worked a full year as a TaxMasters Sales Consultant earned less than **$52,000.00** per year.

*51 (Holding section 7(i) applies to pest control specialists who earned approximately three to seven times the minimum wage in commissions); *Reich v. Cruises Only, Inc.*, 1997 U.S. Dist. LEXIS 23727, at *18-19 (M.D. Fla. 1997) (Holding section 7(i) applies to salespersons of cruise packages who made as much as $60,000/year); *Gatto*, 442 F.Supp. 2d at 542 (Holding section 7(i) applies to loan broker who earned an average of at least $30.13 per hour for a total of $183,464.90 in just over one year of work).

### c.  TaxMasters' Sales Are Recognized As Retail In The Industry

For all of the foregoing reasons, TaxMasters' sales of its tax representation services are and are recognized as retail sales or services in the tax resolution/tax representation industry.[22]

### E.  As A Sales Team Manager, Thelma Coleman Is Exempt From Overtime Under The Administrative Exemption

During the period October 13, 2009 to April 16, 2010, Plaintiff Thelma Coleman was employed by TaxMasters as a Sales Team Manager. As a Team Manager, Ms. Coleman was responsible for, *inter alia*, managing a team of Sales Consultants; distributing and controlling sales prospects; implementing individual Consultants and the sales team's sales goals; managing the team's budget; hiring and firing the team personnel;

---

[22]*See* Declaration of Patrick Cox (Exhibit G).

controlling customer relations; and establishing training programs for each sales representative on her team.[23] Therefore, as will be demonstrated *infra*, in this capacity, Ms. Coleman was exempt from overtime under the FLSA's "administrative" exemption, 29 U.S.C. § 213(a)(1).

The DOL has determined that an "administrative" employee is any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week…exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

See 29 C.F.R. section 541.200.

The DOL has specifically ruled:

> An employee who leads a team of other employees assigned to complete major projects for the employer (such as purchasing, selling or closing all or part of the business, negotiating a real estate transaction or a collective bargaining agreement, or designing and implementing productivity improvements) generally meets the duties requirements for the administrative exemption, even if the employee does not have direct supervisory responsibility over the other employees on the team.

See 29 C.F.R. § 541.203(c).

---

[23]*See* Declaration of Renee' Anderson-Miller (Exhibit A, at Exh. 2).

19

Although whether an employee is exempt from the FLSA's overtime compensation provisions of 29 U.S.C. § 213(a)(1) is primarily a question of fact, the ultimate determination of an employee's status is a question of law. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000).

Indisputably, Thelma Coleman satisfies all three requirements of the "administrative" exemption. First, during the six month period that Ms. Coleman worked as a Sales Team Manager, she was paid far in excess of $455.00 per week.

Second, as a Sales Team Manager, Ms. Coleman's "primary" duties involved office work directly related to the management or general business operations of TaxMasters. In order for an employee's "primary duty" to be "directly related to" an employer's "management or general business operations," the employee must "perform work directly related to assisting with the running or servicing of the business…" *See* 29 C.F.R. § 541.201(a) (emphasis added). Such work includes, *inter alia*, "personnel management." *See* 29 C.F.R. § 541.201(b). Since, as a Sales Team Manager, Ms. Coleman managed a team of Sales Consultants, she clearly engaged in "personnel management."

Third, as a Sales Team Manager, Ms. Coleman exercised **discretion and independent judgment** with respect to **matters of significance**. *See* 29 C.F.R. § 541.200(a)(2), (3). In 29 C.F.R. § 541.202(b), the DOL has delineated the "factors" to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance:

> [W]hether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

As a Sales Team Manager, Ms. Coleman exercised substantial discretion and independent judgment with respect to the management of her sales team. As previously noted, she was solely responsible for managing the Sales Consultants on her team, monitoring their performance, providing them with training, and hiring and firing team members. Additionally, she

was responsible for ensuring that her team complied with company policies and for reporting to other company departments about her team's performance. These were clearly major assignments that affected TaxMasters' business to a substantial degree. *See* 29 C.F.R. § 541.203(c). Therefore, she falls under the FLSA's "administrative" exemption. *See Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 332 (5th Cir. 2000)   (plaintiff was exempt under the "administrative" exemption where she supervised four office employees and her duties "included the coordination of the work of the other employees within the office, the discipline of employees, evaluation of the employees' job performance, conducting of employees' annual performance reviews, making recommendations to Mr. Wilson regarding the hiring of new employees and discharge of present employees, as well as supervising the orientation and training of new office employees.")

## IV.    Conclusion

During the period covered by this lawsuit, the undisputed facts demonstrate that all plaintiffs were exempt from overtime under the FLSA's "commissioned sales" exemption, 29 U.S.C. section 207(i); during her employment as a Sales Team Manager, plaintiff Thelma Coleman was exempt from overtime under the FLSA's "administrative" exemption; and

Defendants, Patrick Cox and Alex Clamon, were not the plaintiff's

"employer," as that term is defined under the FLSA. Therefore, the

Defendants are entitled to judgment as a matter of law pursuant to FRCP 56.

Accordingly, the Defendants respectfully request that this Court enter

judgment in their favor and against the plaintiffs and award them all relief,

including costs, to which they are justly entitled.

Respectfully submitted,

**/s/ Scott Newar**
_____

SCOTT NEWAR
State Bar Number 14940900
700 Louisiana, 25th Floor
Houston, Texas 77002
(713) 226-7950
(713) 226-7181 (Fax)
ATTORNEY-IN-CHARGE
FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that I served the instant pleading on Plaintiffs, through their respective legal counsel, through CM/ECF on January 9, 2012.

**/s/ Scott Newar**
_____

SCOTT NEWAR
State Bar Number 14940900
700 Louisiana, 25th Floor
Houston, Texas 77002
(713) 226-7950
(713) 226-7181 (Fax)
ATTORNEY-IN-CHARGE
FOR DEFENDANTS